## A00A0627. BENN v. THE STATE.
(535 SE2d 28)

BARNES, Judge.

David Lee Benn appeals from his theft by shoplifting convictions (two counts), contending insufficient evidence supports his convictions and that the trial court should have granted his motion for new trial based upon newly discovered evidence. We disagree and affirm.

1. We must review Benn's "challenge to the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)], construing the evidence most strongly in favor of the jury's verdict." *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997). Viewed in this light, the record shows that the jury found Benn guilty of committing theft by shoplifting at two different stores approximately three months apart.

### Saddle Rack Theft

Michelle McAvoy, the owner of Saddle Rack clothing store, testified that on September 8, 1998, she was working alone in the store. While she was arranging a display of Carhartt coveralls located approximately three feet from the store's front door, a "real heavy set," black male wearing a tank top, jogging shorts, sneakers, and a gold chain entered the store. McAvoy recognized the man as someone who had been in the store before.

As the two discussed the coveralls, a driver came into the store to deliver a shipment of hats. McAvoy went to her office at the rear of the store to pay for the shipment, and the deliveryman followed her to the back counter. McAvoy testified there were no other customers in the store when she went into the back room.

The front door was the only means of entry into the store, and every time the door opened, a chime would go off. This door automatically closed upon entry or exit, resetting the chime.

As McAvoy prepared to pay the deliveryman, the electronic chime on the store's front entrance rang, indicating that someone had either entered or left the store. McAvoy left the back office and went to the hat counter, where she could see the front door. She then realized that the man looking at the Carhartt coveralls had left the store and that no one else had entered. The deliveryman left, and as McAvoy resumed her work on the Carhartt merchandise display, she realized that a stack of eight Carhartt coveralls, with a total value of

approximately $800, was missing.

Approximately three months later, the same man returned to the store and asked McAvoy about clothing for his father. McAvoy immediately recognized him and decided to call 911. When McAvoy went to the back counter to obtain her cordless phone after asking the man to wait, he left. McAvoy then called the police and reported what had happened.

### Red Wing Shoes Theft

Eric Stokes, the manager of Red Wing Shoes, testified that on December 7, 1998, he was working alone when a man entered his store and said he planned to buy a large number of Carhartt jackets. The man repeatedly requested several different sizes and colors of jackets, and Stokes went back to the stock room several times to retrieve the requested items and place them on the counter.

On Stokes' last trip to the stock room, he heard the store's electronic buzzer chime once, indicating that the front door had been opened. He returned to the front of the store and realized that the man, who had been the only other person in the store, had left. He then noticed that all of the jackets he had placed on the front counter, as well as several jackets from the displays, were missing. Stokes hurried to the front door and saw the man getting into the back seat of a white Toyota. The man was holding the Carhartt jackets, and a female was driving the car. Stokes testified that 15 jackets, worth over $1,000, were missing. Stokes testified that he obtained the Toyota's license plate and was able to narrow it down to one of two series of numbers and letters, different only by one letter in the series.

Officer Perkins, the officer who reported to the shoe store on the day of the theft, matched one of the tag numbers Stokes gave him to a white Toyota Camry registered to Barbara Williams, the appellant's wife. The other possible tag number was not listed in the computer system. The police then organized a photographic lineup of six men, one of whom was Benn. Both McAvoy and Stokes identified Benn as the man who had taken Carhartt clothing from their stores. They also identified him at trial.

We find this evidence sufficient to support Benn's convictions under the standard set forth in *Jackson v. Virginia*, supra, 443 U. S. 307.

2. In his remaining enumeration of error, Benn claims the trial court should have granted his motion for new trial based upon newly discovered evidence, namely the confession of his wife's nephew. The record shows that at the conclusion of Benn's sentencing hearing, Quincy Williams, the nephew of Benn's wife, approached appellant's

trial counsel and, in an off-record discussion, claimed responsibility for the shoplifting at Saddle Rack.

During a subsequent motion for new trial hearing, Williams testified on direct examination that he and Grady Thomas were responsible for the theft of merchandise at Saddle Rack on September 8, 1998. Specifically, he said that he walked into the store, saw the merchandise, grabbed it, and left the store without talking to anyone. Williams repeatedly claimed that when he entered the store, the door made no sound. Only after the trial judge informed Williams that a bell on the door rang every time the door was opened or closed, did Williams state that he probably did not push the door hard enough to sound the chime or that he did not hear it because he was not paying attention.

Williams also repeatedly testified that he took six or seven *coats*, but later agreed with defense counsel's suggestion that he took brown *coveralls*. Williams' description of himself as a 20-year-old male who is approximately 5'6" tall weighing 178 pounds varied from the store manager's description of the thief.

Williams further testified that Thomas discussed with him the possibility of shoplifting merchandise from Red Wing Shoes. However, Thomas never told Williams that he committed the Red Wing Shoes theft.

Near the end of Williams' testimony, the trial judge hearing the motion, who had also presided over Benn's trial and thus heard all of the evidence against him, told counsel during a bench conference:

> What this man has testified to so far . . . doesn't even raise any speculation in my mind that he was there. In other words, bells he missed, the locations he's missed — in other words, it's not even close to something I should consider about giving Mr. Benn a new trial based on what he's saying. In other words, the Red Wing Shoes, he's telling me somebody else committed the crime that we can't find and then The Saddle Rack — I'm sitting here debating whether I should hold him in contempt of court. . . . I'm not going to do it simply because I want you to read the transcript first. And I won't rule today. But what he just testified to, it's not even — it's just off. It's just way off. . . . I think we just need to quit questioning this gentleman altogether to be honest with you all.

After this bench conference, Williams left the witness stand, counsel argued the motion, and the judge took the motion under advisement. In a written order issued ten days later, the trial court denied Benn's motion for new trial based upon newly discovered evi-

dence, finding "that the testimony of Quincy Williams is not so material that it would probably produce a different verdict, and the new evidence operates solely to impeach the credibility of Michelle McAvoy." The trial court further concluded that "the testimony given by Quincy Williams concerning Grady Thomas committing the shoplifting at Red Wing Shoes is not supported by any credible evidence and is not so material that it would produce a different verdict."

Motions for new trial based upon newly discovered evidence are addressed to the sound discretion of the trial judge, and we will not reverse a denial of such motions absent an abuse of discretion. *Davis v. State*, 221 Ga. App. 375, 377 (471 SE2d 307) (1996). In order to obtain a new trial based upon newly discovered evidence, a defendant must demonstrate each of the following six requirements:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citations omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

In this case, the trial court found Benn failed to demonstrate requirements (3) and (6). When evaluating requirement (3):

> whether any newly discovered evidence would probably produce a different verdict, a trial court should not consider the new evidence in isolation. Rather, it should consider the strength and weaknesses of both the state's and the defendant's case and the nature and strength of a defendant's new evidence. Moreover, the court should evaluate any credibility problems inherent in the new evidence and determine whether because of such problems, the proffered evidence would not result in a different verdict.

(Citations omitted.) *Carl v. State*, 234 Ga. App. 61, 62 (1) (506 SE2d 207) (1998). The trial court followed this mandate and concluded, based upon numerous inaccuracies in Williams' description of the store and the merchandise taken, that his testimony would probably not result in a different verdict with regard to the Saddle Rack theft. The trial court also found that Williams' testimony that another person talked about shoplifting at Red Wing Shoes was not so material that it would produce a different verdict. Having reviewed the trial

transcript and Williams' testimony in the motion for new trial hearing, we find no abuse of discretion by the trial court. Id. See also *Walker v. State*, 222 Ga. App. 491, 492 (474 SE2d 695) (1996) (physical precedent only).

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED MAY 18, 2000.

*James D. Crowe*, for appellant.

*Harry N. Gordon, District Attorney, Michael E. Eberhardt, Assistant District Attorney*, for appellee.