A00A2033, A00A2035. WARREN v. THE STATE (two cases).
(545 SE2d 138)

PHIPPS, Judge.

James Warren was convicted of voluntary manslaughter and possession of a firearm during the commission of a crime. In Case No. A00A2033, Warren contends that the trial court erred in denying his motion for new trial based upon newly discovered evidence and ineffective assistance of counsel. In Case No. A00A2035, Warren contends that the trial court erred in denying his motion for an appeal

bond. We find no abuse of discretion in the trial court's determination that Warren was not entitled to a new trial based upon newly discovered evidence, and we find no clear error in the court's determination that Warren received effective assistance of counsel. Thus, we affirm Warren's conviction.

After deciding the merits of Case No. A00A2033 against Warren, it is unnecessary to decide whether he is entitled to an appeal bond in Case No. A00A2035.

On September 8, 1998, Warren's wife was groped by a man as she shopped at a grocery store. Mrs. Warren reported the matter to the store authorities and to the police. She described the man as black, tall, and muscular. She said that he was wearing a white shirt and camouflage-type pants, smelled heavily of alcohol and had bloodshot eyes. On a store surveillance tape, she was able to identify the man. She believed she had seen the man before but could not say where.

When Mrs. Warren went home, she was still very upset and informed Warren of what had happened at the grocery store. Warren went to the grocery store to view the videotape. He and his brother viewed the still image of the man identified by Mrs. Warren and believed the man was Henry Tanksley. Warren and his brother went looking for Tanksley, ostensibly to confirm their identification of him and report his location to the police.

When Warren and his brother arrived at Tanksley's mother's home, they saw him outside sitting in a chair and drinking a beer. Warren testified that he asked to talk to Tanksley about the incident but Tanksley refused. Then, according to Warren, he attempted to call the police on his cellular phone, but Tanksley charged him, swinging a tire iron. Warren testified that his brother blocked one blow with a shovel but that Tanksley continued to swing the tire iron, and he shot Tanksley in self-defense.

### Case No. A00A2033

1. Before trial, Warren sought to ascertain the level of intoxicants in Tanksley's bloodstream. Apparently, a blood alcohol test ordinarily would have been performed in connection with the autopsy of the victim. But it was not done in this instance because Tanksley had received numerous blood transfusions at the hospital which treated him after the shooting. Warren subpoenaed the hospital's records regarding its treatment of Tanksley, but the records supplied to Warren did not include toxicology reports. When defense counsel contacted the hospital, he was informed erroneously that no blood alcohol tests had been performed on Tanksley.

During its deliberations, the jury sent a question to the judge

asking whether a toxicology report, including blood alcohol content, had been made on Tanksley. Pursuant to a stipulation, the jury was instructed that "no tests were performed because there were too many transfusions."

After the trial, the defense discovered that a blood alcohol test had been performed on Tanksley. Apparently, the results had been inadvertently omitted from the compilation of Tanksley's medical records. A copy of the results obtained from an emergency room physician showed that Tanksley had a blood alcohol content of 0.163.

Warren contends that this test result constitutes newly discovered evidence which entitles him to a new trial. To obtain a new trial based upon newly discovered evidence, a defendant must satisfy each of the following requirements:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. [Cit.][1]

The trial court's resolution of a motion for new trial based upon newly discovered evidence will not be reversed unless there is an abuse of discretion.[2]

The trial court determined that the probative value of the blood alcohol test was cumulative of other evidence regarding Tanksley's alcohol consumption and that there was no reasonable probability that the result of the trial would have been different if this evidence had been submitted to the jury.

Evidence which is of a higher and different grade than that previously presented on a material point is not cumulative.[3] Because we find Tanksley's blood alcohol test results to be of a higher grade than other evidence presented regarding the extent of his alcohol consumption, we disagree with the determination that this new evidence was cumulative.

However, we agree with the trial court that Warren has not demonstrated a reasonable probability that the outcome of his trial would have been different if the blood alcohol test results had been presented to the jury. Warren asserts that Tanksley's alcohol con-

---

[1] *Benn v. State*, 244 Ga. App. 67, 70 (535 SE2d 28) (2000).
[2] Id.
[3] *Humphrey v. State*, 207 Ga. App. 472, 474 (1) (428 SE2d 362) (1993).

sumption was relevant to establishing that he was the aggressor in the fatal altercation. But even without the alcohol test results, the jury had considerable unrebutted evidence before it that Tanksley had been drinking heavily and that his behavior might have been adversely affected as a result.

Warren's wife testified that Tanksley smelled like a brewery, had bloodshot eyes, grabbed her in her genital area and made nonsensical statements to her. A store employee testified that Mrs. Warren told her at the scene that her assailant had reeked of alcohol.

Warren testified that when he found Tanksley, he was sitting in a chair drinking beer. That testimony was corroborated by a police investigator's testimony that approximately 20 minutes after the report of the shooting, he found a can of beer, still somewhat cool, in the vicinity of the chair where Warren testified Tanksley had been sitting.

The State did not dispute that Tanksley had been drinking before his altercation with Warren. Moreover, the State did not dispute that Tanksley was the man who had assaulted Warren's wife. The prosecutor conceded in her closing argument, "I don't expect you to like what Henry Tanksley did at the grocery store."

Warren filed affidavits from two jurors to support his argument regarding the materiality of the blood test results. One juror stated that his verdict probably would have been different, and the other stated that her verdict possibly would have been different if the test results had been in evidence. Even assuming the affidavits are appropriate for consideration,[4] they do not persuade us that there was a manifest abuse of the trial court's discretion in resolving this matter. Warren has not shown that the blood alcohol test results are so material that they probably would produce a different verdict.

The likelihood of a different verdict on retrial of this case depends heavily on credibility determinations. On the hearing of a motion for new trial based on newly discovered evidence, those determinations are vested in the discretion of the trial court.[5]

We find that the trial court did not abuse its discretion in denying Warren's motion for new trial based upon the discovery of Tanksley's blood alcohol test result.

2. Warren asserts that his trial counsel rendered ineffective assistance by failing to cross-examine Tanksley's mother and another witness, Jim Barefield, about Tanksley's prior conviction for burglary. A review of the record shows that in connection with his motion for new trial, Warren raised only the issue of whether his

---

[4] See OCGA § 17-9-41 (affidavits of jurors may be taken to sustain but not to impeach verdict).
[5] See *Young v. State*, 194 Ga. App. 335, 336 (1) (a) (390 SE2d 305) (1990).

trial counsel should have cross-examined Tanksley's mother and not Barefield. Thus, we shall consider only that issue on appeal.[6]

On direct examination at trial, Tanksley's mother testified:

We been living there twenty something years. We ain't never had no problem with nobody. Henry never messed with nobody. And they came and they murdered my child. . . . And my heart is bleeding inside. My son never left me. He kept my yard clean. He was a good son. He didn't bother nobody. He didn't run the streets. . . .

At the hearing on Warren's motion for new trial, his trial counsel testified that he did not believe Tanksley's prior burglary conviction would have impeached the mother's testimony. Moreover, he explained, "I didn't think that she gave any testimony that contradicted what [Warren] said. She was very emotional. She . . . clearly came across as a victim. I think it was our strategy not to be too rough on her."

In order to prevail on an ineffectiveness claim, a convicted defendant must show[:] (1) that counsel's performance was deficient, i.e., that counsel's performance was not reasonable under all the circumstances, and (2) that this deficient performance prejudiced the defense, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[7]

"A trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous and the defendant must overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional conduct. [Cits.]"[8] Decisions regarding how to conduct cross-examinations are considered to be tactical or strategic and thus are within " 'the exclusive province of the lawyer after consultation with his client.' [Cit.]"[9] "[S]trategic choices made after thorough investigation are virtually unchallengeable. [Cit.]"[10]

It is arguable that the testimony of Tanksley's mother opened

---

[6] See *Vaughn v. State*, 226 Ga. App. 318, 320 (2) (486 SE2d 607) (1997) (court cannot consider argument being raised for first time on appeal).

[7] (Citations and punctuation omitted.) *Ponder v. State*, 201 Ga. App. 388-389 (1) (411 SE2d 119) (1991).

[8] (Citations omitted.) *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

[9] *Esquivel v. State*, 236 Ga. App. 325, 326 (512 SE2d 61) (1999).

[10] Id.

the door to the introduction of Tanksley's prior burglary conviction and that counsel should have impeached her testimony with it. But because Tanksley's prior burglary conviction was of questionable significance to the ultimate question of whether he was the aggressor in this encounter, it does not appear to this court that there is a reasonable probability that the outcome of the trial would have been different if the prior conviction had been introduced. Thus, we find no clear error in the trial court's determination that Tanksley received effective assistance of counsel.

### Case No. A00A2035

3. Because we have affirmed Warren's convictions, his contention that the trial court erred in denying him an appeal bond is moot.[11]

*Judgment affirmed in Case No. A00A2033. Appeal dismissed as moot in Case No. A00A2035. Johnson, P. J., and Smith, P. J., concur.*

DECIDED FEBRUARY 6, 2001 — 

*Martin C. Puetz, George D. Bush,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.

---

[11] *Williams v. State,* 244 Ga. App. 692, 697 (6) (536 SE2d 572) (2000); *Dorminey v. State,* 205 Ga. App. 806, 808 (423 SE2d 698) (1992); *Harris v. State,* 196 Ga. App. 304, 307 (396 SE2d 288) (1990).