A04A1874. ROBINSON v. THE STATE.
(610 SE2d 194)

SMITH, Presiding Judge.

Aunterio Robinson was indicted on one count of aggravated assault. A jury found him guilty as charged, and judgment of conviction and sentence were entered. This appeal follows the denial of his motion for new trial. Robinson raises three enumerations, contending that the trial court erred by admitting into evidence the prior inconsistent statements of two witnesses, by "effectively" denying his right to confront witnesses under the Sixth Amendment to the United States Constitution, and by permitting the State to place his character in issue improperly. We find no merit in any of Robinson's contentions, and we affirm the judgment.

Construed to support the jury's verdict, the evidence presented at trial showed that Rodney Shaw, also known as "Poncho," and Thomas Milo were engaged in a discussion at a cafe when Robinson, also known as "Bobo," entered the cafe. Robinson owed Shaw money, and when Shaw demanded it, Robinson became "very loud" and "boisterous." Not wanting "any trouble," Shaw and Milo left the cafe in Shaw's truck.

Robinson followed them to a gas station, and an argument between Shaw and Robinson ensued, which soon turned into a fistfight. A resident of a nearby apartment complex was out on his balcony and heard someone shout: "When you bring me my money bring it to me correct." A wrecker driver and a firefighter were driving by and observed the altercation. They testified that the person who was winning the fight, later identified as Shaw, chased the other man, Robinson, who then raised his arm and pointed it toward his pursuer. Shaw retreated running toward the door of the closed gas station with Robinson in pursuit and tried unsuccessfully to enter, seeking cover. The firefighter then heard gunshots as Robinson shot Shaw twice.

At this point, Milo intervened and was able to grab the gun away from Robinson. As he did so, the gun's magazine fell to the ground. Milo then threw the gun over a fence onto the grounds of an apartment complex. The magazine was later recovered in that location by police officers. Robinson went around the fence, retrieved the gun, and fled in his car. Milo drove Shaw to the hospital.

Detective Grant Foster of the Marietta police department was summoned to the hospital, and Milo told him that "a guy named Bobo shot" Shaw. Shaw refused to talk to Foster, but he eventually agreed to talk with his girlfriend's brother, Reginald Johnson, who was also a Marietta police detective. Both Shaw and Milo gave statements. Both men stated that Robinson shot Shaw. Two days later, Foster and Johnson showed Shaw and Milo a photographic lineup. Each man picked out Robinson's photograph immediately. Each man signed a lineup form indicating he had picked Robinson out of the lineup.

Shaw and Milo testified at trial. Both witnesses testified that they were intoxicated when the incident occurred. Milo admitted being shown the lineup, remembered he picked someone out, and testified that he signed the lineup form. He could not recall any other relevant facts concerning the incident except that Shaw was shot and that he transported Shaw to the hospital. He first testified that he remembered talking to Detective Foster, but shortly afterward he stated, "I don't even remember him." He was certain, though, that he did not "tell him anything." Shaw testified that he did not know who shot him, that he did not know or speak to Detective Foster, and that he did not talk to Detective Johnson. He did not remember being shown a lineup or signing the lineup form.

1. Robinson contends that the trial court erroneously admitted the pretrial statements given by Shaw and Milo. He points out that both Shaw and Milo testified at trial that they were very intoxicated and did not recall the events leading to Shaw's being shot, nor did they remember who shot Shaw. Robinson asserts that their testimony at trial was therefore "nonexistent." He then argues that it follows that their prior statements were neither consistent nor

inconsistent with their trial testimony and that, under *Hill v. State*, 250 Ga. App. 897 (553 SE2d 289) (2001), these witnesses could not be impeached with their prior statements. We do not agree.

First, although Shaw and Milo testified that they did not recall many of the facts surrounding the incident, both also gave responsive answers to some questions. Shaw testified that he did not know who shot him, that he did not speak with Detective Johnson, and that he never even saw Detective Foster. Milo denied telling Detective Foster anything. It was proper to admit these witnesses' prior inconsistent statements to impeach them as to these assertions. *Gibbons v. State*, 248 Ga. 858, 863-864 (286 SE2d 717) (1982).

*Hill v. State*, supra, 250 Ga. App. 897, relied upon by Robinson, is distinguished on its facts. In *Hill*, the witness did not testify to any relevant facts that could have been inconsistent with a prior statement. He merely testified that he needed " 'a chance to talk to somebody' " before testifying further, and he answered the remaining questions by saying he did not remember anything about the night in issue or what he had told the police. Id. at 901. When "a witness merely states that he does not remember, he cannot be impeached by the showing of former statements with respect to the facts which he claims not to remember. This is true regardless of whether the witness'[s] failure to 'remember' is real or contrived." (Citation, punctuation and footnote omitted.) Id. at 902 (1).

But the prior inconsistent statement of a witness who appears and testifies is admissible, not just for impeachment purposes, but as substantive evidence. *Robinson v. State*, 278 Ga. 31, 33-34 (2) (597 SE2d 386) (2004). And when a witness denies making a pretrial statement to the police, the content of such a prior statement is admissible as being wholly inconsistent with the witness's testimony. *Wilson v. State*, 277 Ga. 114, 116 (1) (587 SE2d 9) (2003). Here, as in *Wilson*, the witnesses in issue did not remain silent when called to the stand or merely claim loss of memory as to everything. They did answer several important questions, and some of the answers to those questions were totally inconsistent with previous statements made to the police by these same witnesses. In particular, these witnesses, like the witness in *Wilson*, completely denied making prior statements to the detectives. Id. at 116 (1). Their prior inconsistent statements were therefore not excludable. See *Brown v. State*, 266 Ga. 633, 635-636 (2) (469 SE2d 186) (1996).

2. Nor did the admission of these prior statements to police "effectively" violate Robinson's right to confront witnesses under the Sixth Amendment to the United States Constitution. Contrary to Robinson's argument, the witnesses' testimony was not "nonexistent," and he was not precluded from cross-examining them. Robinson asserts the authority of *Crawford v. Washington*, 541 U. S. 36 (124 SC

1354, 158 LE2d 177) (2004), in support of his contention. But in *Crawford*, the prior statement improperly admitted was that of a wife who did not testify at trial because of a Washington state marital privilege barring her from testifying without her husband's consent. The United States Supreme Court held that admission of her prior statement violated the Confrontation Clause. The Court explicitly held, however, that

> when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.

(Citations and punctuation omitted.) Id. at 38, n. 9. On the other hand, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." (Citations and footnote omitted.) Id.

Here, because the witnesses were present at trial and testified, *Crawford* does not apply. Robinson's confrontation right was not violated.

3. In Robinson's last enumeration, he maintains that the trial court erred by permitting the State to place his character in issue without his first having done so. Robinson refers to a question asked by the State of prospective jurors during voir dire but not answered. The State asked whether any jurors felt the State should not prosecute one criminal for shooting another criminal. The voir dire was not transcribed, but the trial court placed the question on the record after sustaining Robinson's objection to the question and before denying Robinson's motion for mistrial.

We find no error. In the first place, to warrant reversal, Robinson is required to demonstrate by the record that the trial court abused its discretion in denying the motion for mistrial. Because we have no transcript of the voir dire, we must presume that the trial court was correct. See *Gilbert v. State*, 222 Ga. App. 787, 788 (4) (476 SE2d 39) (1996). "[I]t has long been the law that the control of the voir dire examination is vested in the sound legal discretion of the trial judge and will not be interfered with by this court unless the record clearly shows an abuse of that discretion." (Citations, punctuation and footnote omitted.) *Pitts v. State*, 260 Ga. App. 553, 559 (5) (b) (580 SE2d 618) (2003).

Second, we do not agree with Robinson that the question was unduly prejudicial. Referring to *Robinson* as a "criminal" could be interpreted as referring only to the fact that he was, in fact, then on trial for a criminal offense. See generally *Yarber v. State*, 159 Ga. App. 392, 393 (283 SE2d 620) (1981). See also *Bennett v. State*, 266 Ga. App. 502, 507-508 (5) (597 SE2d 565) (2004). And referring to *Shaw* as a criminal cannot have been prejudicial because that fact was established during the trial. Moreover, describing Shaw as a criminal may have also undermined the jury's perception of Shaw's credibility, which was favorable to Robinson. The trial court did not err in denying Robinson's motion for mistrial.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 10, 2005.

*Frederick M. Scherma*, for appellant.
*Patrick H. Head, District Attorney, Amy H. McChesney, C. Lance Cross, Assistant District Attorneys*, for appellee.