## A06A0799. CLARITT v. THE STATE.
### (634 SE2d 81)

RUFFIN, Chief Judge.

A jury found Cedric Claritt guilty of two counts of armed robbery, two counts of aggravated assault, and one count of possessing a firearm during the commission of a crime. On appeal, Claritt contends that the trial court erred in: (1) admitting certain hearsay testimony; (2) charging the jury on parties to a crime; and (3) denying his motion for new trial based upon newly discovered evidence. He also asserts that he received ineffective assistance of counsel. As Claritt's arguments lack merit, we affirm.

Viewed in a light favorable to the verdict, the evidence shows that on the night of June 20, 2002, Cheuk and Yong Hui Kang were working at J's Package Store, which they owned. One man entered, while talking on a cell phone, and loitered in the store until the lone customer left. He then approached Mrs. Kang and asked her the price of a chocolate cigar. At that time, a second man entered the store wearing a mask and wielding a gun, and he demanded the cash from all of the registers. The two men took the cash, grabbed several bottles of Grey Goose vodka, and fled.

Following the robbery, Mr. Kang discovered a cell phone belonging to Claritt on the counter at the store. When the police arrived, the phone began to ring, and the caller was listed as "Polo." Polo, whose real name is Lane Hammond, testified that on the night of June 20, Claritt and Theronn Henderson arrived at the apartment complex where Hammond's sister lived. The two men produced several bottles of Grey Goose vodka, which the group then drank.

Also present was Terrell Lipscomb. Lipscomb, who had been charged with an unrelated crime, volunteered to police that he had information regarding the robbery. Initially, Lipscomb told police that the night of the robbery, he heard Claritt and Henderson "discussing hitting a lick" or committing a robbery. At trial, however, Lipscomb stated that he could not remember the nature of the conversation with the police investigator. Upon further examination, Lipscomb said he "doubt[ed] it's possible" he had such a conversation because he did not really know a "Theronn" and he only knew Claritt through an acquaintance.

Claritt and Henderson ultimately were charged with the crimes, and Henderson pleaded guilty to two counts of armed robbery and

testified against Claritt. According to Henderson, Claritt pressured him into committing the robbery to repay a marijuana debt owed to Claritt. Based upon this and other evidence, the jury found Claritt guilty.

1. According to Claritt, the trial court erred in admitting evidence of Lipscomb's prior statement to police that Claritt and Henderson had talked about "hitting a lick" on the night of the robbery. Specifically, Claritt maintains that because Lipscomb claimed he could not remember the conversation — as opposed to disavowing his prior statement — the prior statement was inadmissible. We disagree.

In certain instances in which a witness claims not to recall a prior statement, that statement is inadmissible as a prior inconsistent statement.[1] Where, however, the witness provides relevant testimony that tends to contradict the prior statement, such prior inconsistent statement is properly admitted as substantive evidence.[2] Here, Lipscomb admitted speaking to the police investigator, but initially claimed that he could not recall the conversation. When pressed, Lipscomb testified he "doubt[ed]" he had made such statement to police. Under these circumstances, Lipscomb essentially disavowed his earlier statement, and the trial court did not err in admitting it as substantive evidence.[3]

2. Claritt also contends that the trial court erred in charging the jury on parties to a crime. Initially, we note that Claritt did not except to the jury charges and has thus waived the issue on appeal.[4] Thus, we need not decide the issue. Even if Claritt had objected, however, we find no basis for reversal.

It is well established that a trial court properly instructs on a given subject if there is some evidence to support the charge.[5] "[I]t is not necessary there should be compelling evidence giving rise to that point; it is enough if there be something from which a legitimate process of reasoning can be drawn from it by the jury."[6] According to Claritt, Henderson's testimony that he was forced to commit the crime undermines the State's theory that the two acted in concert and renders unnecessary the jury charge on parties to a crime.[7] There

---

[1] See *Johnson v. State*, 255 Ga. 552, 556 (4) (a) (341 SE2d 220) (1986); *Hill v. State*, 250 Ga. App. 897, 902 (1) (553 SE2d 289) (2001). We further note that the language in *Hill* suggesting that a prior inconsistent statement is inadmissible even where the witness's lapse in memory is clearly contrived is mere dicta and thus not binding. See *State v. Kell*, 276 Ga. 423, 425 (577 SE2d 551) (2003).

[2] See *Robinson v. State*, 271 Ga. App. 584, 585-586 (1) (610 SE2d 194) (2005).

[3] See id.; *Spann v. State*, 248 Ga. App. 419, 420-422 (1) (546 SE2d 368) (2001).

[4] See *Waddell v. State*, 277 Ga. App. 772, 778 (5) (627 SE2d 840) (2006).

[5] See *Fitz v. State*, 275 Ga. App. 817, 824 (3) (622 SE2d 46) (2005).

[6] (Punctuation omitted.) Id.

[7] Claritt also asserts that, because the jury asked for a recharge on parties to a crime, it

was, however, other evidence from which the jury could have concluded that Claritt and Henderson acted together in robbing the store.

Henderson testified that Claritt gave him a gun prior to the robbery. And the jury could have concluded that a weapon would not be given to an unwilling participant. Moreover, Lipscomb's prior inconsistent statement — properly admitted as substantive evidence — demonstrated that the two later discussed having committed the robbery, which also suggests that Claritt and Henderson were acting in concert. It follows that the trial court did not err in charging the jury on parties to a crime.[8]

3. Claritt contends that the trial court abused its discretion by denying his motion for new trial based upon newly discovered evidence. A motion for new trial on the basis of newly discovered evidence is addressed to the sound discretion of the trial judge, and we will not reverse a trial court's ruling absent abuse of discretion.[9] A defendant who seeks a new trial on such grounds bears the burden of establishing that: (1) the evidence came to his attention after the trial; (2) the delay in discovering the evidence did not result from a lack of due diligence; (3) the evidence is so material that it would likely produce a different result; (4) the evidence is not merely cumulative; (5) he has procured the witness's affidavit or explained its absence; and (6) the effect of the newly discovered evidence is not merely to impeach a witness's credibility.[10] " 'Failure to show one requirement is sufficient to deny a motion for a new trial.' "[11]

At trial, still photographs from the package store's surveillance camera videotape were tendered into evidence. The quality of the pictures was not good, however, and Claritt's trial attorney apparently argued that the person in the video did not look like Claritt. During the hearing on the motion for new trial, Claritt presented the testimony of George Pearl, "an expert in the field of photography and reverse projection photogrammetry." Pearl testified that, based upon his comparison of Claritt's measurements to the measurements of the perpetrator in the videotape, the perpetrator was one and a half to two inches taller than Claritt.

On appeal, Claritt argues that the trial court should have granted his motion for new trial based on Pearl's testimony. We

---

rejected Henderson's testimony that Claritt was the gunman. Thus,. Claritt reasons, he was prejudiced by the improper charge.

[8] See id.; *Parnell v. State*, 260 Ga. App. 213, 220 (8) (581 SE2d 263) (2003).

[9] See *Seritt v. State*, 237 Ga. App. 665, 666 (2) (516 SE2d 366) (1999).

[10] See *Fetter v. State*, 271 Ga. App. 652, 653 (610 SE2d 615) (2005).

[11] Id.

disagree. Claritt apparently was aware of the existence of the surveillance photos, and his trial attorney drew comparisons between the perpetrator and Claritt. Under these circumstances, Claritt had the evidence at trial: the photographs from the videotape. He desires a new trial so he can present testimony from a newly discovered witness, who will extrapolate meaning from the evidence. But this is not newly discovered evidence for purposes of granting a new trial.[12]

Moreover, we do not believe that Pearl's testimony is so material that it would have produced a different result. Initially, we note that Pearl's testimony was somewhat equivocal. Moreover, at the hearing on Claritt's motion for new trial, the State presented its own expert, Thomas Jordan, to counter Pearl's testimony. Jordan testified that, after looking at the various images, he "found it difficult to agree with [Pearl's] margin of error, with his assessment whether or not the person in the tape was" as tall as Pearl estimated. Given this conflicting evidence, we cannot say that Pearl's testimony exonerates Claritt.[13] And thus we cannot find that the trial court abused its discretion in denying the motion for new trial.[14]

4. In his final enumeration of error, Claritt asserts that he received ineffective assistance of trial counsel. In order to sustain such claim, Claritt must show not only that his counsel's performance was deficient, but also that he was prejudiced by the alleged deficiency.[15] In reviewing allegations of ineffective assistance, "there is a strong presumption that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment."[16]

(a) According to Claritt, his counsel was ineffective for failing to procure Pearl or some other expert in reverse projection photogrammetry to undermine the impact of the surveillance videotape and photographs. As discussed in Division 3, however, it is far from certain that such testimony would have altered the outcome at trial. Accordingly, Claritt is unable to establish prejudice.[17]

(b) Claritt also argues that trial counsel should have objected to the prosecutor's opening statement when she mistakenly said that Claritt had been charged with possession of a firearm by a convicted felon. Claritt's attorney testified that he generally does not object to opening statements unless he perceives something truly egregious had been said. Counsel apparently felt no comment by the prosecutor

---

[12] See *Seritt*, supra at 667.

[13] See *Thomas v. State*, 227 Ga. App. 469, 470-471 (4) (489 SE2d 561) (1997).

[14] See *Warren v. State*, 247 Ga. App. 838, 841 (1) (545 SE2d 138) (2001).

[15] See *Dye v. State*, 266 Ga. App. 825, 826 (2) (598 SE2d 95) (2004).

[16] (Punctuation omitted.) Id.

[17] See *Duran v. State*, 274 Ga. App. 876, 879 (3) (619 SE2d 388) (2005).

was sufficiently egregious as to warrant an objection. And " '[i]t is well established that the decision of whether to interpose certain objections is a matter of trial strategy and tactics.' "[18] As counsel's decision in this regard was tactical, it provides no basis for an ineffectiveness claim.[19]

(c) Similarly, Claritt contends that his attorney should have objected during opening statements when the prosecutor speculated as to what Claritt's defense would be. Again, however, counsel testified that his decision not to object was strategic, and such decision does not constitute ineffective assistance.[20]

(d) Claritt maintains that counsel was ineffective for acknowledging during his opening statement that Claritt was a marijuana dealer. Counsel testified that he felt the information would explain "the type of witnesses that would appear" and address credibility issues. The attorney further stated that, given Henderson's testimony that he participated in the robbery to repay a marijuana debt, the evidence of Claritt's marijuana dealing would be tendered in any event. Under these circumstances, the decision to address Claritt's marijuana dealing during opening statements was tactical.[21]

(e) Claritt contends that counsel rendered ineffective assistance for failing to reserve exceptions to the jury charges. Specifically, Claritt argues that such failure precluded him from challenging the instruction on parties to a crime. As discussed in Division 2, however, the trial court properly instructed the jury on this principle. It follows that this argument presents no basis for reversal.[22]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 16, 2006 —
RECONSIDERATION DISMISSED JULY 11, 2006.

*Maria Murcier-Ashley*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

---

[18] *McGuire v. State*, 266 Ga. App. 673, 679 (4) (b) (598 SE2d 55) (2004).
[19] See id.
[20] See id.
[21] See *Johnson v. State*, 272 Ga. App. 385, 388 (5) (612 SE2d 518) (2005).
[22] See *Scott v. State*, 277 Ga. App. 126, 129-130 (4) (625 SE2d 526) (2006).