A06A0055. BURDETTE v. THE STATE.
(624 SE2d 253)

BLACKBURN, Presiding Judge.

Following a jury trial, Curtis Wayne Burdette appeals his conviction on three counts of burglary, challenging the sufficiency of the evidence and arguing that the court erred (i) in its jury instruction on the evidence needed to corroborate an accomplice's testimony, and (ii) in its denial of Burdette's motion for new trial which asserted ineffective assistance of counsel grounds. We hold that the evidence

sufficed to sustain the conviction, that the challenged jury instruction followed the pattern charge expressly approved by the Council of Superior Court Judges, and that evidence supported a finding of effective assistance. Accordingly, we affirm.

1. Regarding Burdette's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and Burdette no longer enjoys the presumption of innocence. *Davis v. State.*[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find Burdette guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[2]

So construed, the evidence shows that on August 3, 2003, a masked man wearing a distinctive work shirt (blue-green colored with a white name tag sewn over the left breast) was caught on video entering a Chevron convenience store in Newnan in the middle of the night through an entry forced by a crowbar. The burglar stole prepaid phone cards and phones and broke open some video poker machines. Two days later, a burglar used a Gorilla brand crowbar to force entry into another Chevron store in Newnan in the middle of the night, stealing rolls of lottery tickets, cigarettes, and prepaid phone cards. Within two hours of the burglary, Burdette was filmed on video at another convenience store redeeming eight winning tickets from one of the stolen rolls of lottery tickets. He was wearing the same distinctive shirt and other clothing seen in the video from the first burglary.

Six days later, a third burglary involving two men occurred at a sports bar where the burglars used crowbars to gain entry and then immediately began breaking into video poker machines. Police arrived quickly, frightening the two men into leaving through the back of the business. One burglar, later identified as Robert Askew, left a cell phone on the premises. Police discovered a van parked in the nearby alley that contained burglary tools, prepaid phone cards, cartons of cigarettes, and receipts from video poker machines. The van was registered to a Clarence Burdette and was used in a plumbing business, whose owner the police then unsuccessfully tried to contact for additional information. The officer left a business card with the receptionist for the owner to use to contact the officer.

Shortly thereafter, police were in a convenience store in the vicinity of the business and thought they may have seen the man who redeemed the eight lottery tickets. When they re-entered the store to confirm, the man had escaped to the rear of the store, where they

---

[1] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

found him hiding in the store's cooler. This man, who was Burdette, had the business card of the police, which had been left at the plumbing business, on his person.

This evidence sufficed to sustain the three burglary[3] convictions. Askew, the burglar whose cell phone was left at the sports bar, testified and identified Burdette as his accomplice in that burglary. His testimony as to Burdette's connection to the crime was corroborated by (i) the presence of the van from the plumbing business at the sports bar, which van contained burglary tools, coupled with Burdette's possession of the police business card, which had been left for the owner of the plumbing business, and (ii) Burdette's futile attempt to hide from police soon after that burglary. See *Dennard v. State*[4] ("[t]his attempt to hide from or elude the police constitutes circumstantial evidence of [defendant's] consciousness of guilt"). This more than sufficed as slight evidence, which on appellate review is all that is needed to corroborate an accomplice's testimony. See *Gibson v. State.*[5]

Regarding the second Chevron burglary, we hold that circumstantial evidence tied Burdette to this crime. He was videotaped redeeming eight of the tickets from the stolen roll of tickets within two hours of that burglary, and testimony showed that a person would most likely have to have at least thirty of those tickets to redeem eight winning tickets. Moreover, the Gorilla crowbar found at the crime scene was similar to the Gorilla crowbar found at the sports bar scene, where Burdette was directly identified as the burglar who requested such a crowbar to gain entry.

Regarding the first Chevron burglary, we hold that circumstantial evidence tied Burdette to this crime also. The video of the burglary showed a masked man wearing a distinctive work shirt and certain other clothing, which shirt and clothing Burdette was wearing when he was filmed redeeming lottery tickets only two days later.

Burdette points out that with reference to the two Chevron burglaries, in which only circumstantial evidence connected him to the crimes, OCGA § 24-4-6 required the proved facts to exclude other reasonable hypotheses of his innocence. However, "[w]hether the evidence in this case is sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury." (Punctuation omitted.) *Woods v. State.*[6] The jury having been instructed on this point, the above-described evidence

---

[3] See OCGA § 16-7-1 (a).

[4] *Dennard v. State*, 241 Ga. App. 794, 796 (527 SE2d 884) (2000).

[5] *Gibson v. State*, 267 Ga. App. 473, 474 (1) (600 SE2d 417) (2004).

[6] *Woods v. State*, 275 Ga. App. 471, 472-473 (1) (620 SE2d 660) (2005).

and accompanying inferences authorized the jury to exclude reasonable hypotheses of innocence with regard to both Chevron crimes.

2. Burdette's second and third enumerations contend that the court erred in giving the following jury charge:

> Now, the testimony of a single witness, if believed, is generally sufficient to establish a fact. An exception to this rule is made in the case, in this case a burglary, where the witness is an accomplice. The testimony of the accomplice alone is not sufficient to warrant a conviction. The accomplice's testimony must be supported by other evidence of some type and that evidence must be such as would lead to the inference of the guilt of the accused independent of the testimony of the accomplice. It is not required that supporting evidence be sufficient to warrant a conviction or that the testimony of the accomplice be supported in every material particular. The supporting evidence must be more than that a crime was actually committed by someone. It must be sufficient to connect the accused with the criminal act and must be more than sufficient to merely cast upon the accused a grave suspicion of guilt. *Slight evidence from another source that connects the accused with the commission of the alleged crime [tends] to show participation in it may be sufficient supporting evidence of the testimony of an accomplice.* In order to convict, that evidence, when considered with all the other evidence in the case, must be sufficient to satisfy you beyond a reasonable doubt that the accused is guilty. Whether or not any witness in this case was an accomplice is a question for you to determine from the evidence in this case. The sufficiency of the supporting evidence of an accomplice is a matter solely for you to determine.

(Emphasis supplied.)

Burdette argues that the italicized portion confused the jury into thinking that if it found slight evidence of corroboration, it was then required to find sufficient corroboration. This argument not only ignores the language "*may* be sufficient supporting evidence," but also ignores the next sentences in which the jury is then instructed that the sufficiency of the supporting evidence is a matter solely for it to determine and that the whole of the evidence must be sufficient to satisfy it beyond a reasonable doubt that Burdette was guilty.

Compare *Price v. State*[7] (absent the latter language, the jury instruction was defective) with *Rawlins v. State*[8] (with such language, the jury charge was proper). Thus, this jury instruction, which in all material aspects is identical to the pattern jury instruction expressly approved by the Supreme Court of Georgia in *Edmond v. State*,[9] was properly given by the trial court. See also *Terrell v. State*;[10] *Thomas v. State*.[11] Inasmuch as the essential principles in Burdette's proposed charge on the same subject matter were all covered in this charge, the trial court did not err in refusing to give the proposed charge also. See *Jones v. State*[12] ("[t]he charge given by the trial court was a correct statement of the law, and the failure to use a defendant's suggested language to convey to the jury a principle of law accurately covered in the charge is not error").

3. Burdette asserts that the court erred in denying his motion for new trial, which was based on a claim of ineffective assistance of counsel.

> In order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.

(Punctuation omitted.) *Davis*, supra at 718 (3).

Burdette argues that his counsel failed (i) to meet with him to discuss trial strategies and witnesses until the day of trial, (ii) to interview or call as a witness Askew's girlfriend, (iii) to interview all of the State's witnesses, or (iv) to have the jury focus on the video showing Burdette redeeming the lottery tickets so as to show Askew's

---

[7] *Price v. State*, 141 Ga. App. 335, 337 (3) (233 SE2d 462) (1977).

[8] *Rawlins v. State*, 124 Ga. 31, 49-50 (16) (52 SE 1) (1905).

[9] *Edmond v. State*, 267 Ga. 285, 288 (3) (476 SE2d 731) (1996). See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, Part 3, Par. CC, pp. 52-53 (2nd ed. 1991). See also Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, Sec. 1.31.90, pp. 17-18 (3rd ed. 2003).

[10] *Terrell v. State*, 271 Ga. 783, 786 (4) (523 SE2d 294) (1999).

[11] *Thomas v. State*, 238 Ga. App. 42, 44 (10) (517 SE2d 585) (1999).

[12] *Jones v. State*, 277 Ga. 36, 41 (8) (586 SE2d 224) (2003).

girlfriend was in that video also. Evidence supported the trial court's rejection of each of these claims.

Regarding the first allegation, Burdette's counsel testified at the motion for new trial hearing that in the year leading up to trial, he met with Burdette between ten and twenty-five times to discuss the defense of the burglary charges. The trial court was entitled to believe Burdette's counsel over Burdette. See *Coggins v. State*[13] ("the trial court was entitled to believe counsel's testimony he consulted with his client over appellant's testimony that he did not").

Regarding the failure to interview or call Askew's girlfriend to discredit Askew's testimony, we note that Burdette failed to call her as a witness in the motion for new trial hearing or to otherwise offer evidence as to what she would have said. Having failed to present more than his bare assertions that this witness may have given evidence showing Askew was not credible, Burdette cannot show his counsel was ineffective in failing to interview or call her. See *Gadson v. State*.[14]

Regarding interviewing State witnesses, Burdette's counsel testified that he interviewed the owner of each burglarized store, spoke to Askew's attorney to ascertain the substance of Askew's testimony, spoke to the lead investigator for each burglary, and interviewed the lottery commission witness who testified at trial. Evidence supported the trial court's finding that Burdette's counsel was not ineffective in this regard.

Regarding the ticket-redeeming video, Burdette claims that his counsel should have focused the jury more on this video so as to show that Askew's girlfriend was also in that video and that therefore Askew was lying when he said that he had nothing to do with the second Chevron burglary in which the lottery tickets were stolen. Burdette's counsel testified, however, that such a move would have been completely counter to the defense's primary trial strategy, which was to *minimize* the jury's focus on this incriminating video. Such strategic decisions are "virtually unchallengeable as grounds for ineffective assistance." *Lewis v. State*.[15]

Because evidence supported a finding that Burdette did not carry his burden of showing that his trial counsel's performance was deficient, the trial court did not err in denying Burdette's motion for new trial.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

---

[13] *Coggins v. State*, 275 Ga. 479, 482 (3) (569 SE2d 505) (2002).

[14] *Gadson v. State*, 252 Ga. App. 347, 352 (11) (b) (556 SE2d 449) (2001).

[15] *Lewis v. State*, 270 Ga. App. 48, 49 (606 SE2d 77) (2004).

DECIDED DECEMBER 6, 2005.

*Gerald P. Word,* for appellant.
*Peter J. Skandalakis, District Attorney, Bruce P. Dutcher, Assistant District Attorney,* for appellee.