A05A2280. WILBURN v. THE STATE.
(629 SE2d 267)

SMITH, Presiding Judge.

Following his indictment for armed robbery, three counts of aggravated assault with a deadly weapon, aggravated assault with intent to murder, aggravated assault with intent to rob, aggravated

battery, burglary, theft by taking, and theft by deception, a jury found Michael Wilburn guilty of all charges except armed robbery and theft by taking. Wilburn appeals, contending that insufficient evidence supports his convictions, that the trial court improperly admitted evidence of his mug shot and improperly allowed a witness to bolster the character of another witness, and that he received ineffective assistance of counsel on numerous grounds. Finding no merit in these claims, we affirm.

1. We first address Wilburn's contention that the evidence was insufficient to convict him. Construed in favor of the verdict, the evidence shows that the victim was a boat captain, living on his boat while it was being repaired in dry dock. On a Thursday, two days before he was assaulted, the victim saw Wilburn sleeping in a truck near the boat and hired him to help repair it. On Friday afternoon, the victim put the boat in the water and bought some beer and food to celebrate the completion of the repairs. Wilburn and Chris Price, who had been working with the victim for about three months, were present. At about 10:00 p.m., the victim told them to leave because he wanted to go to sleep. Price left before Wilburn, went home, and went to sleep.

The victim testified that when he went to bed, the defendant was still on his boat. After falling asleep, he was awakened about 1:00 a.m. by Wilburn going through his wallet on the nightstand. When he rolled over and asked "what was going on," Wilburn hit him on his head with a crowbar three times. A struggle ensued with the two men fighting throughout the boat. While in the galley, Wilburn stabbed him repeatedly with a fork. When Wilburn straddled the victim's back, the victim pushed backward, knocked the breath out of Wilburn, and escaped by jumping onto an adjacent boat.

Carol Barnes, whose boat was docked next to the victim's boat, testified that the victim, who was covered in blood, banged on her door at 1:00 a.m. When she asked him what had happened, he replied that he did not know and stated, "Chris went crazy or something, and beat me with a crowbar." Barnes then replied, "I don't think so, I walked Chris off the boat at 10:30." She then went inside her boat, called 911, and returned to the victim, whom she had locked out of her cabin because he was so bloody. The victim then said, "I don't know why Chris went crazy. I've been so good to him. I don't know why Chris would do this to me." Barnes reiterated again that she did not believe Chris had done it because she had walked him home and believed he was too intoxicated to come back from his own boat to beat up the victim.

Barnes testified that at this point, Wilburn, who had been standing at the end of the dock when the victim first came to Barnes, stated that he had chased Price to the end of the dock and lost him.

Barnes noticed that Wilburn was holding a crowbar and had blood smeared and spattered "all over him." His hair, which was normally pulled back in a ponytail, was loose and "puffed out," with blood and tissue hanging in it.

Barnes recalled that she again told the victim that she did not believe that Price had done it, that he needed to calm down and remember what had happened, that the police were on their way, and that it would get straightened out. After telling the victim that the police were coming, Barnes noticed Wilburn was gone. She never saw him again.

When the police arrived, they went to Price's boat and awakened him. They asked Price to lift his shirt and saw creases in the skin of his back as if he had been sleeping. He was wearing shorts and a t-shirt and his hair was dry and looked like he had slept on it.

When an officer interviewed the victim at the hospital shortly after the incident, the victim identified Price as his assailant, but he also told the police that he could not see very well without his glasses, and that he was not wearing his glasses when he was attacked.

Another shrimp boat captain, Richard Chisolm, testified that when he inquired as to why the police were near the victim's boat he saw the victim and learned that he had been attacked. While he was walking back to his boat, Wilburn jumped out from behind a tree with a crowbar in his hand, yelling "Chris." He was covered in blood and Chisolm offered to let him "wash up" on his boat. Wilburn cleaned himself on Chisolm's boat, borrowed a tee-shirt, and left. Chisolm saw Wilburn toss his bloody and ragged tee-shirt overboard and never saw him again.

The victim testified that many of his tools were missing when he returned home from the hospital, including a router that was later located in a pawn shop. The pawn shop manager testified that the router was pawned by Wilburn at 9:19 a.m. on Saturday, approximately eight hours after the victim's attack.

The victim testified that he did not remember identifying his assailant shortly after his attack. He explained his inconsistent identifications by noting that immediately after the incident, he was repeating the last words he heard because he "was still brain-scrambled" and "probably going into shock."

Wilburn argues that the evidence is insufficient because there is reasonable doubt about the identity of the victim's assailant based on the victim's initial identification of Price. But, "[t]he jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence." (Citation omitted.) *Strong v. State*, 265 Ga. App. 257, 258 (593 SE2d 719) (2004). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's

verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

2. Wilburn challenges two evidentiary rulings of the trial court on several grounds.

(a) He asserts the trial court improperly admitted three booking photographs of him over his counsel's objection that their prejudicial effect outweighed their probative value. The photographs were admitted to show that Wilburn had long hair, which was consistent with other witness's description of his appearance on the night the victim was attacked. At trial, Wilburn's hair was cut shorter. The trial court disagreed with defense counsel's argument that the picture clearly showed that Wilburn was wearing prison garb, and our examination of the photograph supports this conclusion. The trial court ordered that a "front sheet" be redacted from the photographs and allowed them into evidence. We find no error. The photographs were admissible to identify Wilburn and to show how he looked at the time of the crime since his appearance had changed by the time of trial. *Buckles v. State*, 260 Ga. App. 638, 639 (3) (580 SE2d 638) (2003).

(b) In his reply brief, Wilburn also asserts, for the first time, that the photographs should not have been admitted because there was no foundation testimony about the time when they had been taken. We cannot consider this claim, however, because Wilburn waived it by failing to make this objection at trial. *Tyler v. State*, 147 Ga. App. 394, 395 (2) (249 SE2d 109) (1978).

(c) Because his counsel failed to object, Wilburn also waived his claim that the trial court erred by admitting evidence that bolstered Price's character. *Ziegler v. State*, 270 Ga. App. 787, 789 (2) (608 SE2d 230) (2004).

3. Wilburn claims his counsel was ineffective because he failed to object to the evidence bolstering the character of Price and the "lack of foundation for pictures admitted," failed to obtain, review, and object to admission of the victim's medical records, failed to strike a juror, failed to poll the jury, and did not meet sufficiently with him.

> The two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation, punctuation and footnote omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "A trial court's finding that

a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citations and punctuation omitted.) *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

> Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.

*Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

(a) Wilburn claims his counsel should have objected to Barnes's testimony that she did not believe Price assaulted the victim because she had "been familiar with Mr. Price for over about seven, eight years and I know him as a very non-violent person, and I was like concerned."

At the motion for new trial hearing, Wilburn's trial counsel testified that he did not object to this testimony because it was not responsive to the question, "was buried in beneath testimony about other things," and he did not want to draw the jury's attention to it by standing up and asking for a curative instruction and a mistrial. As this was a reasonable trial strategy, we find no merit in this enumeration. *Blunt v. State*, 275 Ga. App. 409, 410-411 (1) (a) (620 SE2d 572) (2005).

(b) Wilburn also complains that his trial counsel was ineffective for not objecting "to lack of foundation for the pictures admitted." He fails, however, to identify in his brief the photographs to which counsel should have objected. In his reply brief, he claims counsel should have objected based on Wilburn's own testimony in the motion for new trial hearing that the pictures did not fairly and accurately represent the scene. Specifically, Wilburn testified that the interior of the boat appeared to have been cleaned up before the photographs were taken and that he had seen silverware on the floor and Burger King wrappers and beer cans all over the boat. At trial, however, a witness for the State testified that the interior pictures of the boat accurately depicted the condition of the boat after the victim's attack. A proper foundation therefore was laid for their admission. See *Turner v. State*, 181 Ga. App. 531 (353 SE2d 13) (1987). As a result, we find that Wilburn's trial counsel was not ineffective for failing to object to the admission of these photographs based on a lack of foundation being laid for their admission. *Woods v. State*, 271 Ga. 452, 454 (2) (c) (519 SE2d 918) (1999) (finding there is no deficient performance when an attorney fails to object to admissible evidence).

(c) Wilburn contends his trial counsel was ineffective for failing to obtain, to review, and to object to admission of, the victim's medical records. At the motion for new trial hearing, Wilburn's counsel testified that he was given access to and reviewed the victim's medical records several months before trial. This portion of Wilburn's ineffectiveness argument therefore fails, because it is not supported by the record.

Trial counsel also testified in the motion for new trial hearing that he consulted with Wilburn and made a strategic decision to stipulate to the admissibility of the medical records to downplay the issue of the victim's injuries by making it unnecessary for a doctor to testify, thereby keeping the focus of the trial on the identity issue. This testimony supports the trial court's conclusion that trial counsel made a reasonable strategic decision. See *Adkinson v. State*, 245 Ga. App. 178, 180 (3) (537 SE2d 474) (2000) (trial counsel made reasonable strategic decision to stipulate to admission of evidence).

(d) Wilburn's claim that his counsel was ineffective for failing to strike a juror is deemed abandoned based on his failure to support this claim with argument or citation of authority. Court of Appeals Rule 25 (c) (2). *Hush v. State*, 193 Ga. App. 421, 422 (1) (387 SE2d 651) (1989).

(e) Wilburn asserts his trial counsel was ineffective for failing to poll the jury based on Wilburn's testimony that trial counsel pointed out to him two jurors who, at the time of the verdict, were holding their faces in their hands and shaking their heads no. Trial counsel testified to the contrary at the motion for new trial hearing and denied seeing any upset jurors. When considering claims of ineffectiveness of counsel, the trial court determines witness credibility and is not required to accept the defendant's version of events. *Brower v. State*, 230 Ga. App. 125, 126 (2) (495 SE2d 600) (1998); *Randolph v. State*, 225 Ga. App. 324 (484 SE2d 1) (1997). Because a trial court's denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous, we find no merit in this enumeration. See *Noble v. State*, 220 Ga. App. 155, 157 (1) (469 SE2d 307) (1996).

(f) In his final claim of ineffectiveness, Wilburn argues that his counsel did not "meet sufficiently" with him because they met only three times for a total of one hour before the case was tried. Trial counsel testified that he met with Wilburn a minimum of five times, and that each of the last two or three meetings before the trial lasted in excess of one hour. We find no grounds for reversal on this claim because Wilburn fails to show how additional and longer meetings would have altered the outcome of his trial. *Washington v. State*, 274 Ga. 428, 430 (2) (554 SE2d 173) (2001).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JANUARY 19, 2006 —
RECONSIDERATION DENIED MARCH 30, 2006.

*James A. Yancey, Jr.*, for appellant.
*Stephen D. Kelley, District Attorney, Leslie K. DeVooght, Assistant District Attorney*, for appellee.