## A06A1605. LONG v. THE STATE.
(636 SE2d 88)

MIKELL, Judge.

Jeremy Michael Long was convicted of aggravated assault by a Murray County jury and sentenced to ten years, one to serve in prison and nine to serve on probation. His motion for new trial was denied, and this appeal followed. In his sole enumeration of error, Long argues that he was denied effective assistance of counsel because his trial counsel failed to call witnesses on his behalf. We affirm.

Construed in favor of the verdict, the record shows that three witnesses testified on behalf of the state: Deputy Kelly Thurman of

the Murray County Sheriff's Department, Steven Ware, and Tammy Hoyle Glass. Thurman testified that on October 23, 2003, he served an eviction notice on the owners of a mobile home located at 914 Prince Beam Road in Murray County. Accompanying him were Ware, who owned Big Apple Transport, which was a business that transported mobile homes, including repossessed ones, and four of Ware's employees, including Glass. Thurman recalled that when they arrived, the homeowners were not present; that they talked to the owner of the property on which the mobile home was parked, whom he believed to be Long's grandmother, who agreed to allow Ware to move a fence to remove the mobile home as long as he agreed to put it back; and that when the owners arrived, they indicated that they had no problem with the repossession, and Thurman left the scene. At that time, Ware and his employees already had begun to remove the mobile home's underpinnings and its front porch, and Long had not arrived on the scene.

Ware testified that although the wife was emotional about losing her home, she and her husband were cooperative and peaceful; that Long arrived, holding a beer in his hand, and asked, "What the fuck we were doing," as they continued to prepare the mobile home for transport; and that he explained to Long that the owners had given him permission to repossess the mobile home and the property owner had consented to him removing the fence. Ware further testified that Long became upset, then entered his mobile home and returned with a rifle. Long yelled at Ware and his employees. Ware continued to ignore him, thinking that Long was intoxicated. Ware testified that while standing about 20 feet away, Long hoisted the gun onto his shoulder, pointed it at him, moved the lever on the gun, and told him if he did not stop, he would blow his "f'ing" head off. Ware stopped, eased back to his truck, and called the sheriff's department for help.

Thurman returned to the scene after Ware advised him that Long had threatened him with a gun. Ware told him that the gun had been placed in a car with the female who was with Long when he arrived at the scene and left shortly before Thurman arrived. Thurman arrested Long, who was sitting outside in front of his mobile home. Long denied ever having a gun at the scene. Thurman recalled that a lady at the scene told him that Long had a weapon and that it had been placed in Kelly Cagle's[1] car. Long was transported to the jail by another deputy, and Thurman went to Cagle's house. Thurman asked Cagle about the gun that Long had given her; she replied that it was in her house, and then retrieved it for him.

---

[1] At the time of the hearing on the motion for new trial, Cagle had married and changed her name to Kelly Grant. For purposes of consistency, she will be referred to herein as "Cagle."

Glass testified that she was employed to drive the escort vehicle for Big Apple Transport on the day of the incident; that the repossession was proceeding without difficulty until Long arrived with his girlfriend[2] and started yelling; that she saw Long come out of his trailer with a gun and point it at Ware; that she could not hear the conversation between Long and Ware; and that she saw Long pull a lever underneath the gun. Once Long displayed the weapon, Glass got into her truck and watched everything that transpired from there. She saw Long's girlfriend wrestle with him to get the gun away, place it in her vehicle, and drive away.

The state concluded its case after Glass testified, and defense counsel indicated that no evidence would be presented on Long's behalf. The jury found Long guilty of aggravated assault and acquitted him on the terroristic threats charge.

"To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies."[3] In order to meet this burden, "a defendant must overcome the strong presumption that his counsel's representation fell within the wide range of reasonable professional conduct."[4] When courts are considering ineffectiveness claims, they are "not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[5] A trial court's finding that a defendant received effective assistance of counsel must be upheld unless clearly erroneous.[6] Long argues that counsel's failure to call several witnesses deprived him of his sole defense, i.e., that he did not point his gun at Ware. We find no merit to Long's claim.

At the hearing on the ineffectiveness claim, Long's mother testified that Long had the gun in his hand when he talked to Ware but that he did not point it at Ware; that Long used the gun to gesture toward the fence; that she could not hear their conversation because the trucks were loud; that she told Long to place the gun in her truck; that when Cagle indicated that she needed to leave, she told her to take the gun with her; and that Long was not upset although Ware

---

[2] On cross-examination, Glass testified that she was not certain that the girl at the scene was Long's girlfriend but that is what she was told.

[3] (Citations omitted.) *Hardegree v. State*, 230 Ga. App. 111, 113 (4) (495 SE2d 347) (1998).

[4] (Citation omitted.) *Lee v. State*, 280 Ga. 521, 522 (2) (630 SE2d 380) (2006).

[5] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

[6] *Williams v. State*, 234 Ga. App. 191, 193 (2) (506 SE2d 237) (1998).

was. During cross-examination, Long's mother explained that she only told Cagle to take the gun because Cagle's fiancé was supposed to set the sights on the gun for Long.

Long's grandmother testified that Long was upset because Ware tore down her fence; that Long yelled at Ware about the mess he had made but did not point the gun at Ware; that the gun was pointed down the entire time; that she made Long walk away and told him that Ware was calling the police; that she could hear the conversation between Long and Ware; and that when she tried to tell Long's counsel what happened, he told her not to worry about it because the state did not have a case.

Long's cousin, Amy Hayes, who owned the repossessed trailer, testified that she could not hear the conversation between Long and Ware but could hear that they were shouting; and that as he yelled at Ware, Long was holding the gun up but did not point it at anyone. Cagle testified that Long previously had been married to her cousin and was a friend of the family; that she picked Long up earlier that day and they went to his house to get a gun that her fiancé had agreed to set the sights on; that they saw someone repossessing Long's cousin's trailer; that when she removed her son from her truck to use the restroom, she saw Long walking toward the trailer with his gun in his hand; that Long was upset because his cousin's children were upset; that Long carried the gun by his side pointed toward the ground; that she could not tell if Long was talking to Ware; and that Long returned to the truck with the gun and she took it with her.

Long testified that he had a gun at the scene because he was planning to go hunting but that it was pointed down; that there was no confrontation between he and Ware; that he simply asked Ware what they were doing; that he did not put a gun in Cagle's vehicle because her young son was sleeping in the car but only put clothes in there for his hunting trip with Cagle's fiancé; that he did not even point his finger at Ware nor was he ever upset; and that Cagle took the gun because she was bringing it to her fiancé. Long further testified that he and his trial counsel did not talk about a trial strategy until the trial was over and that when he mentioned his witnesses during the trial, trial counsel indicated that his strategy was to let the prosecution contradict itself. When questioned by the trial judge, Long stated that he wanted his witnesses called and that when his counsel explained his strategy, Long did not tell him that he disagreed with it.

Trial counsel testified that his trial strategy was to seek a total acquittal or a conviction on a lesser included offense because it was his client's position that he had not committed an offense but only had the weapon because he was transferring it to someone else who wanted to use it on a hunting trip. Trial counsel further testified that

the two witnesses Long wanted him to call did not relate the information they wished to testify about to the police at the scene when they were given an opportunity to do so and that he felt the state would emphasize their failure to do so. Trial counsel also testified that although he and Long talked about these witnesses, they ultimately agreed that the witnesses would not be called. He explained that based on the police report, he concluded that Long's grandmother had given him a different version of events than she gave the officers and that the witnesses contradicted each other and were all related to Long, which called into question their credibility. In support of trial counsel's explanation of his strategy, the record shows that the witnesses's testimony at the ineffectiveness hearing was contradictory on the issues of where the gun was pointed, whether Long was upset, and whether Long talked to Ware. Trial counsel also testified that he decided not to call Long as a witness because Long had prior convictions and because it was his opinion that defendants generally do not help their cases when they testify. Finally, trial counsel testified that as a part of his trial strategy, he did not want to sacrifice Long's right to present final closing argument.

"The decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client."[7] In spite of Long's testimony that trial counsel did not consult with him about his trial strategy until the trial ended, the trial court was authorized to believe trial counsel's testimony, as opposed to Long's.[8]

As stated earlier, to prevail on an ineffectiveness claim, the defendant must show that trial counsel performed deficiently and that but for that performance, the outcome of the trial would have been different,[9] and "[w]e are not required to address both components of the test if the defendant has made an insufficient showing on one."[10] Even if we concluded that counsel's performance was deficient, due to the inconsistencies in the testimony of the witnesses at the new trial hearing, Long has not shown that but for his counsel's

---

[7] (Citation, punctuation and footnote omitted.) *Stuart v. State*, 274 Ga. App. 120, 122 (616 SE2d 855) (2005).

[8] See *McDaniel v. State*, 279 Ga. 801, 802 (2) (a) (621 SE2d 424) (2005) (trial court entitled to believe counsel's testimony); *Burdette v. State*, 276 Ga. App. 695, 700 (3) (624 SE2d 253) (2005) (same).

[9] See *Hardegree*, supra.

[10] (Footnote omitted.) *Millsap v. State*, 275 Ga. App. 732, 735 (3) (621 SE2d 837) (2005).

deficiencies, the outcome of his trial would have been different.[11] Accordingly, we affirm the trial court's ruling.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED AUGUST 29, 2006.

*Rebecca B. Paris*, for appellant.
*Kermit N. McManus, District Attorney, Barry S. Minter, Assistant District Attorney*, for appellee.

---

[11] See id. at 735 (3) (a); *Smith v. State*, 255 Ga. App. 580, 583 (1) (565 SE2d 904) (2002).
[1] OCGA § 9-12-130 et seq.