A07A0606. THOMAS v. THE STATE.
(645 SE2d 713)

MIKELL, Judge.

After a jury trial, Rodricus Izal Thomas was convicted of two counts of aggravated assault and one count each of theft by shoplifting, fleeing or attempting to elude a police officer, and theft by receiving stolen property. On appeal, Thomas enumerates two errors: (1) the trial court failed to instruct sua sponte the jury on his sole defense of coercion; and (2) trial counsel was ineffective because he insisted that Thomas testify but did not adequately prepare him to do so. We affirm.

"On appeal from a criminal conviction, we neither weigh the evidence nor judge the credibility of witnesses. Rather, we view the evidence in the light most favorable to the verdict, determining only whether it was sufficient for a rational trier of fact to find the defendant guilty of the crimes charged beyond a reasonable doubt."[1] So viewed, the evidence shows that on the evening of November 5, 2004, Sergeant Dwayne Taylor of the Douglas County Sheriff's Department was working as a security officer in a department store at Arbor Place Mall (the "Mall"), when he observed Thomas and another man gathering several items of men's clothing and taking them to different parts of the store. After watching the two men for about twenty minutes, Taylor moved closer to them and concluded that they were preparing to shoplift. When the men bolted for the door, Taylor followed, chasing them into the parking lot.

Taylor testified that Thomas jumped into the driver's seat of a black Nissan vehicle and his accomplice ran past the car to some bushes. Taylor ran up to the car and pointed his gun at Thomas and told him to get out of the car. Thomas put the car in reverse and turned the steering wheel sharply to the right, striking Taylor with the vehicle. Thomas then continued in reverse, stopping long enough to let his accomplice jump into the back seat. Taylor further testified that after regaining his footing, he chased the car, which Thomas drove in reverse. Once Thomas stopped the vehicle, Taylor drew his weapon again and Thomas gunned the vehicle toward him. Taylor testified that he jumped out of the vehicle's path instead of shooting into the car. Once Taylor watched the car drive by, he called in its tag number to his dispatcher, whom he had advised earlier that he was chasing a car on foot. Before returning to the store, Taylor heard over his radio that the car had been reported stolen.

At trial, Taylor identified Thomas from pictures that he had downloaded from the store's cameras. Taylor also identified the vehicle driven by Thomas and items found therein as those stolen from the store. Daniel Pambi, a sales associate who witnessed the incident, confirmed Taylor's version of the events leading up to the theft and the suspects' escape. Pambi also saw the vehicle strike Taylor and drive toward him before leaving the premises.

Deputies J. D. Shipp and Michael Wheeler and Sergeant David Gray, also of the Douglas County Sheriff's Department, testified that they pursued the vehicle driven by Thomas in a high speed chase, at times exceeding 100 mph, which was recorded by the video cameras in each patrol car. The videotapes were played for the jury. Gray

---

[1] (Citations and footnote omitted.) *Thompson v. State*, 281 Ga. App. 627 (636 SE2d 779) (2006).

testified that he was finally able to terminate the pursuit safely by spinning the vehicle with his patrol car. Both suspects ran away on foot. Thomas later surrendered at the Douglas County jail.

At trial, Thomas admitted his involvement in the incident, but claimed that he was coerced by a man, whom he identified as "Horn," the older brother of one of Thomas's former classmates. Thomas testified that Horn threatened to leave him at the Mall if he did not participate in the crime; that this was his first time at the Mall; that Horn told him that he had to drive the car if he wanted to go home; that he pulled off in the car while Taylor had his gun drawn because he became afraid when Taylor tried to bust out the window with his gun; that he did not hit Taylor with the car; that he drove the car during the high speed chase under Horn's direction; and that when the car stopped, he and Horn ran.

1. In his first enumerated error, Thomas argues that the trial judge should have given sua sponte a charge to the jury on his sole defense of coercion. We disagree.

Although "[a] trial court must charge the jury on a defendant's sole defense, even without a written request, if the circumstances support the charge,"[2] the evidence in this case did not support a charge on coercion. Under the definition of coercion found in OCGA § 16-3-26, "[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury."

> The contours of the defense of coercion are described in *Chambers v. State*,[3] which in part shapes it thusly: Coercion involves the involuntary performance of a criminal act under fear of threats or menaces involving a direct danger to life or great bodily injury where the danger is abated only by the performance of the criminal act. The danger must not be one of future violence but of present and immediate violence at the time of the commission of the forbidden act.[4]

In other words, in order to apply the defense of coercion, there must be "evidence of a threat of immediate violence at the time of the commission of the [crime], not simply a threat of violence or danger in

---

[2] (Punctuation and footnote omitted.) *Scott v. State*, 281 Ga. App. 813, 815-816 (4) (637 SE2d 751) (2006).

[3] 154 Ga. App. 620, 624 (1) (269 SE2d 42) (1980).

[4] *Wilson v. State*, 255 Ga. App. 497, 499 (2) (565 SE2d 847) (2002), citing *Slater v. State*, 185 Ga. App. 889-890 (2) (366 SE2d 240) (1988).

the future."[5] In this case, there was no immediate or future threat of violence. There was no evidence that Thomas feared Horn or that Horn threatened him with violence. Nonetheless, Thomas maintains that he was entitled to the coercion charge because Horn told him that he had to participate in the crime if he wanted to go home. The affirmative defense of coercion does not apply under these circumstances.[6] A fortiori, it was not necessary for the trial court to give a charge sua sponte on coercion.

2. Thomas argues that his trial counsel was ineffective because he insisted that appellant testify on his own behalf yet failed to prepare appellant to do so. We disagree.

"To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies."[7] Courts considering ineffectiveness claims are "not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[8] "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[9] Bearing these principles in mind, we find no merit to Thomas's claim.

Thomas's contention that counsel forced him to testify is refuted by trial counsel's testimony to the contrary at the motion for new trial hearing, which the trial court was authorized to believe.[10] Thus, this claim of ineffectiveness fails. Additionally, Thomas's claim that trial counsel did not adequately prepare him to testify also fails. Trial counsel testified that he prepared Thomas for trial by telling him to answer the questions that were asked. In the absence of a proffer showing how further preparation would have changed Thomas's testimony such that it would have affected the outcome of the case,

---

[5] (Footnote omitted.) *Maxey v. State*, 272 Ga. App. 800, 802 (1) (613 SE2d 236) (2005). See also *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003); OCGA § 16-3-26.

[6] Compare *Jones v. State*, 226 Ga. App. 619, 621 (1) (487 SE2d 371) (1997) (defendant's testimony that his co-defendant forced his participation by pointing a gun at him, giving him orders, and causing him to fear for his life entitled him to a charge on coercion, even absent a request).

[7] (Citation omitted.) *Hardegree v. State*, 230 Ga. App. 111, 113 (4) (495 SE2d 347) (1998), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[8] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

[9] (Citation and punctuation omitted.) *Carey v. State*, 281 Ga. App. 816, 818 (2) (637 SE2d 757) (2006).

[10] *Burdette v. State*, 276 Ga. App. 695, 700 (3) (624 SE2d 253) (2005).

"[Thomas] cannot meet his burden of making an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case."[11] As Thomas has not made such a proffer, his claim that trial counsel was ineffective because he inadequately prepared Thomas to testify at trial also fails.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 8, 2007 —

*King, King & Jones, David H. Jones, Matt A. Hirsch*, for appellant.

*David McDade, District Attorney*, for appellee.

---

[11] (Punctuation and footnote omitted.) *Villegas v. State*, 262 Ga. App. 55, 57 (3) (b) (584 SE2d 666) (2003).