## A07A0433. WALLIN v. THE STATE.
### (646 SE2d 484)

BERNES, Judge.

A Walker County jury convicted Kenneth Ray Wallin of aggravated assault and aggravated stalking. In his sole enumeration of error, Wallin contends that he received ineffective assistance from his trial counsel. The asserted deficiency is his trial counsel's failure to call the clinical psychologist retained by the defense, or to obtain a continuance so that the psychologist's attendance could be secured, and thereby failing to effectively pursue at trial the issues of mental incompetency and legal insanity. Finding no prejudicial error, we affirm.

"On appeal from a criminal conviction, we construe the evidence in the light most favorable to the jury verdict." *Moore v. State*, 283 Ga. App. 533, 534 (642 SE2d 163) (2007). So viewed, the evidence adduced at trial reflects that the victim and Wallin were involved in a tumultuous marriage spanning approximately ten years. During the course of their marriage, Wallin went on disability for schizophrenia. According to the victim, her marriage with Wallin was difficult from the beginning, but was especially so during periods when Wallin was not taking his schizophrenia medication.

In December 2000, the victim moved to a shelter and sought a temporary protective order against Wallin after he accused her of having an affair, punched her in the face repeatedly, pointed a loaded gun at her head and threatened to shoot her, and forced her to have sex with him. On January 8, 2001, the superior court entered a protective order prohibiting Wallin from, among other things, coming within 500 feet of the victim.

On January 15, 2001, the victim was driving her van to pick up her children from a babysitter. While stopped at a red light on a hill, the victim spotted Wallin cresting the hill in the opposite direction. The victim recognized Wallin's 1973 Pontiac Ventura, and she saw Wallin behind the wheel of the car. The testimony of the victim and other witnesses also reflects that one or two other passengers were in the car with Wallin as he drove.

When the light turned green and the victim began to turn right, Wallin followed the victim, accelerated, and rammed his vehicle into the back of the victim's van. Wallin continued ramming his vehicle into the van as the victim tried to call 911 on her cell phone. The victim then attempted to turn her van onto a side street in order to escape, but Wallin again rammed his vehicle into the victim's van, causing it to rise up on two wheels. As the van came back down onto all four wheels, Wallin rammed the van one final time, leading the victim to lose control of the van, crash into a stone wall, and lose consciousness. When the victim regained consciousness, she looked up and saw Wallin flee from the scene in his vehicle. Wallin's flight was confirmed by another eyewitness to the incident.

As a result of the January 15 incident, Wallin was arrested and indicted for aggravated assault and aggravated stalking. Following his arrest, Wallin repeatedly phoned and wrote the victim while he was in state custody, telling her not to testify against him. According to the victim, Wallin wanted her to tell law enforcement that the crash had been an accident, caused by a faulty transmission.

Before trial, Wallin was evaluated by Dr. Samuel Perri, a forensic psychologist and director of forensic services at Northwest Georgia Regional Hospital. Dr. Perri conducted his initial psychological evaluation of Wallin at the county jail. In an evaluation report dated June 7, 2001, Dr. Perri concluded that Wallin was currently suffering from "paranoid delusions" and was "presently not competent to assist his attorney." As a result of Dr. Perri's evaluation report, the trial court found Wallin not competent to stand trial and remanded him to the Department of Human Resources for treatment at Northwest Georgia Regional Hospital.

During his hospitalization, Wallin was placed in the care of a "treatment team" who continued to conduct psychological evaluations of Wallin and who consulted with Dr. Perri about Wallin's condition and treatment on repeated occasions. After approximately one month of observations and psychological evaluations, Wallin's treatment team and Dr. Perri came to the conclusion that Wallin was malingering, or "attempting to appear in a much worse psychological condition than he actually [was] experiencing." Dr. Perri conveyed

these findings to the trial court in an evaluation report dated August 13, 2001. Based on the report, Wallin was remanded back to the county jail.

Following the diagnosis of malingering, Wallin's trial counsel moved for funds to hire a psychologist to evaluate Wallin. The motion was granted, and trial counsel arranged for Dr. Robert D. Shaffer, a private clinical psychologist, to evaluate Wallin at the county jail. Based on his evaluation, Dr. Shaffer concluded that Wallin was not "capable of contributing to his defense [and did not have] a rational understanding of court procedures because of a severe Schizophrenic condition," and, therefore, was not competent to stand trial. Dr. Shaffer memorialized his conclusions in an evaluation report dated December 13, 2001.

Wallin's trial counsel gave notice to the prosecution of Wallin's intent to raise the issues of mental incompetence and legal insanity. After the case was set for trial, trial counsel sent a letter and fax to Dr. Shaffer informing him that he would be needed to testify as a defense expert. Prior to the trial date, however, Wallin's trial counsel was able to reach a negotiated plea agreement with the prosecution. Because he believed that Wallin's case would be disposed of by plea, trial counsel contacted Dr. Shaffer and informed him that he did not need to appear on the date of trial.

Wallin's case was called for jury trial on June 18, 2002. The parties appeared before the trial court and presented the negotiated plea, but the trial court refused to accept it and sounded Wallin's case for trial. Once the plea agreement was rejected, Wallin's trial counsel did not contact Dr. Shaffer to inquire about his availability or move for a continuance in order to secure his testimony. In the ensuing proceedings, Wallin's trial counsel did not pursue the issues of mental incompetency or legal insanity and instead focused on attempting to highlight weaknesses in the state's evidence. Wallin himself did not take the stand, and no other witnesses were called by the defense.

Wallin was convicted on both charged offenses. Subsequently, Wallin was appointed new counsel and moved for a new trial based on his contention that he received ineffective assistance from his trial counsel. Wallin argued that his trial counsel acted deficiently when, after the trial court rejected the negotiated plea and called the case for trial, he failed to contact Dr. Shaffer to inquire about his availability or move for a continuance so as to secure his testimony. Wallin asserted that without benefit of Dr. Shaffer's expert testimony, his trial counsel was unable to argue that Wallin was mentally incompetent to stand trial or to present his strongest defense, legal insanity.

The trial court conducted an evidentiary hearing on Wallin's motion. At the hearing, the evaluation reports of Dr. Perri and Dr. Shaffer were admitted into evidence by stipulation of the parties. The

defense also proffered the testimony of Dr. Shaffer, who testified that based on his evaluation of Wallin, he believed that Wallin was not competent to stand trial, was not capable of understanding right and wrong at the time of the offense, and was compelled by a delusion at the time of the crime. At the same time, Dr. Shaffer conceded on cross-examination that Dr. Perri and the treatment team at Northwest Georgia were in a better position than he to determine whether Wallin was exaggerating his condition, given the fact that they observed Wallin over an extended period of time, whereas he evaluated Wallin for less than a day.

Wallin's trial counsel also testified at the evidentiary hearing. He noted that prior to trial, he met with Wallin approximately ten times. Based on his multiple interactions with Wallin, trial counsel testified, "I felt that on the day of trial [Wallin] fully understood what was going on. When we filled out the plea form, [Wallin] fully understood that would be his best alternative. . . ." Trial counsel further testified that Wallin assisted in his defense by identifying potential witnesses and by reviewing photographs of the vehicle used in the incident.

When asked about why he did not attempt to secure Dr. Shaffer's attendance at trial, Wallin's trial counsel testified that he did not know why he did not do so and that "quite frankly [he] just thought that the guilty plea would be accepted." Yet, trial counsel also testified that he did not believe that Wallin's claim of legal insanity was viable based on his pre-trial interview of the witnesses to the incident, including the passengers in Wallin's vehicle, who informed him that Wallin had intentionally driven to the area looking for the victim and told him that "at the time [Wallin] knew what he was doing."

Wallin himself took the stand at the hearing on his motion for new trial and denied that he is "crazy"; explained that he knew he was on trial for ramming his wife's van; confirmed that he assisted his trial counsel in preparing for trial by identifying potential witnesses and locating the vehicle involved in the incident; and contended that he never rammed his wife's van and that she had accused him of doing so because she believed he was having an affair.

Finally, although she was not present to testify at trial or at the new trial hearing, a stipulated statement from one of the passengers in Wallin's vehicle at the time of the incident was introduced into evidence at the new trial hearing. In the statement, the passenger explained that on the day of the incident, Wallin saw the victim's van proceeding in a different direction than "he was planning," and that as a result, he changed direction, caught up with the victim, and ran into her van. However, the passenger noted that before doing so, Wallin made sure to ask the passenger whether she "saw any children in the vehicle."

Based on the combined evidence introduced at the hearing, the trial court found that Wallin received effective assistance from his trial counsel and denied his motion for new trial. The trial court specifically found that trial counsel's decision not to secure Dr. Shaffer's attendance at trial was within the bounds of reasonable professional conduct, that his decision was a matter of trial strategy, and that, even if counsel was deficient in his decision, there was no reasonable probability that the outcome of the trial would have been different had Dr. Shaffer testified. This appeal followed.

The test for determining whether an appellant received ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Under *Strickland*, "[t]o establish a constitutional deprivation of the right to counsel, appellant has the burden of showing that counsel's performance was deficient and that the deficient performance prejudiced the defense by creating a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). "Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim." (Citation and punctuation omitted.) *Freeman v. State*, 282 Ga. App. 185, 187 (2) (638 SE2d 358) (2006). "A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citation and punctuation omitted.) *Wilburn v. State*, 278 Ga. App. 542, 545-546 (3) (629 SE2d 267) (2006). When considering a claim of ineffective assistance, the trial court, not this Court, is the judge of witness credibility, and "a trial court's denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous." Id. at 547 (3) (e). See also *Copeland v. State*, 281 Ga. App. 11, 14-15 (3) (d) (635 SE2d 283) (2006).

Although the trial court found that trial counsel's decision not to call Dr. Shaffer was a matter of reasonable trial strategy and thus did not constitute deficient performance, the question is close. On the one hand, trial counsel admitted that he had presumed the negotiated plea would be accepted and that he did not know why he made no effort after the plea was rejected to secure Dr. Shaffer's attendance at trial. On the other hand, trial counsel testified that he had come to the conclusion prior to trial that Wallin's claims of mental incompetency and legal insanity were not viable based on the August 13, 2001 evaluation report of Dr. Perri, his own interactions with Wallin, and his interview of the witnesses to the incident — a belief clearly reflected in his decision to try to negotiate a plea with the prosecution.

Nevertheless, we need not resolve the issue of deficient performance. Even if Wallin's trial counsel was deficient in not securing Dr. Shaffer's attendance at trial, we conclude that the trial court did not clearly err in finding that there was no reasonable probability that

Dr. Shaffer's testimony would have changed the trial outcome. We base this conclusion on the fact that the trial court was entitled to give little weight and credit to Dr. Shaffer's expert opinion that Wallin was mentally incompetent to stand trial and legally insane, given the other conflicting and contradictory evidence presented at the new trial hearing and the strong evidence of guilt presented at trial. See, e.g., *Reed v. State*, 248 Ga. App. 107, 109 (1) (b) (545 SE2d 655) (2001) (affirming trial court's denial of ineffective assistance claim, when trial court concluded that potential alibi witness would not have affected the outcome at trial had he testified, because his proffered testimony was entitled to little weight or credit). We will address Dr. Shaffer's expert opinions concerning the issues of mental incompetency and legal insanity separately.

a. *Mental Incompetency.* A defendant is deemed mentally incompetent to stand trial when "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." (Punctuation omitted.) *Florescu v. State*, 276 Ga. App. 264, 265 (1) (623 SE2d 147) (2005), quoting *Drope v. Missouri*, 420 U. S. 162, 171 (II) (95 SC 896, 43 LE2d 103) (1975). While Dr. Shaffer opined in his evaluation report and in his proffered testimony at the new trial hearing that Wallin was not competent to stand trial, the trial court also had before it the August 13, 2001 evaluation report of Dr. Perri contradicting Dr. Shaffer's opinion. And, as noted, Dr. Shaffer himself admitted that Dr. Perri and the treatment team at Northwest Georgia were in a better position to determine whether Wallin was truly incompetent, since they evaluated Wallin over an extended period of time, while his determination was based on one pre-trial evaluation lasting less than one day. Additionally, the trial court had before it at the new trial hearing the testimony of trial counsel and Wallin himself that Wallin understood the basis of the charges against him and the nature of the trial proceedings, and assisted in the preparation of his defense.

Under these circumstances, the trial court was entitled to assign little weight and credit to Dr. Shaffer's expert testimony that Wallin was not competent to stand trial, and, consequently, to find that there was no reasonable probability that the outcome of trial would have been different if the testimony had been introduced. See *Long v. State*, 281 Ga. App. 356, 360-361 (636 SE2d 88) (2006) ("[D]ue to the inconsistencies in the testimony of the witnesses at the new trial hearing, [appellant] has not shown that but for his counsel's deficiencies, the outcome of his trial would have been different."); *Claritt v. State*, 280 Ga. App. 384, 387 (3), (4) (a) (634 SE2d 81) (2006) (concluding that trial court was entitled to find that defendant failed to show that expert's testimony proffered at new trial hearing likely would have altered the outcome at trial, when state proffered expert

testimony that conflicted with and undermined the defense expert's proffered testimony); *Easley v. State*, 266 Ga. App. 902, 904 (1) (598 SE2d 554) (2004) (concluding that it was unlikely that testimony of two witnesses not called by the defense would have impacted the verdict, when testimony at new trial hearing undermined and called into question their credibility as potential trial witnesses).

b. *Legal Insanity.* Under Georgia law,

> a person is not legally insane simply because he suffers from schizophrenia or a psychosis. Rather, a defendant is not guilty by reason of insanity if, at the time of the criminal act, the defendant did not have the mental capacity to distinguish between right and wrong in relation to such act or a mental disease caused a delusional compulsion that overmastered his will to resist committing the crime.

(Citations and punctuation omitted.) *Shepherd v. State*, 280 Ga. 245, 248 (1), n. 3 (626 SE2d 96) (2006). See OCGA §§ 16-3-2; 16-3-3. As noted, Dr. Shaffer opined in his proffered testimony that at the time of the alleged crime, Wallin was not capable of understanding right and wrong and was compelled to act by a delusion. However, the state presented strong evidence at trial that called into question and undermined Dr. Shaffer's expert opinion, including testimony from the victim and other eyewitnesses that Wallin fled from the scene after the crime, as well as the victim's testimony that Wallin later attempted to persuade her to lie about what had occurred. See *Collins v. State*, 283 Ga. App. 188, 191 (1) (a) (641 SE2d 208) (2007) (flight "can serve as evidence of defendant's consciousness of guilt"); *Johnson v. State*, 255 Ga. App. 721, 722 (2) (566 SE2d 440) (2002) (noting that "a defendant's attempt to influence a witness . . . is evidence of consciousness of guilt").

Furthermore, as previously noted, the trial court had before it at the new trial hearing Dr. Perri's August 13, 2001 evaluation report opining that Wallin was exaggerating his mental condition and Dr. Shaffer's concession that Dr. Perri was in a better position to properly evaluate Wallin. Finally, the trial court had before it at the new trial hearing Wallin's own testimony about the incident, as well as the stipulated statement of one of the passengers in his car, both of which contradicted any notion that Wallin was legally insane at the time the incident occurred.

Given the evidence presented at the new trial hearing that conflicted with and undermined Dr. Shaffer's expert opinion that Wallin was legally insane, combined with the strong eyewitness testimony presented at trial reflecting Wallin's consciousness of guilt, the trial court did not err in giving little weight and credit to Dr.

Shaffer's expert opinion and in finding that there was no reasonable probability that the outcome of trial would have been different if he had given the opinion at trial. See *Long*, 281 Ga. App. at 360-361; *Claritt*, 280 Ga. App. at 387 (3); *Easley*, 266 Ga. App. at 904 (1). See also *Ucak v. State*, 273 Ga. 536, 538 (2) (544 SE2d 133) (2001) (no reasonable likelihood that psychologist's testimony would have changed the verdict, when the expert's opinion conflicted "greatly [with] the facts recounted by the eyewitnesses to the events"); *Duncan v. State*, 271 Ga. 704, 705 (3) (524 SE2d 209) (1999) (no reasonable likelihood that testimony of expert witness would have changed the verdict, when expert's testimony presented at new trial hearing conflicted with what was observed by multiple eyewitnesses to the crime).

For these reasons, we conclude that the trial court committed no error in finding that Wallin failed to meet his burden of establishing the prejudice prong of his ineffective assistance claim. Wallin's motion for new trial on the ground of ineffective assistance therefore was properly denied.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED MAY 14, 2007.

*Douglas R. Woodruff, David J. Dunn, Jr.*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Alan C. Norton, Assistant District Attorney*, for appellee.